IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| SUPERMEDIA LLC<br>f/k/a IDEARC MEDIA LLC, | * |  |
| Plaintiff, | * |  |
| v. | * | Case No. BPG-12-1117 |
|  | * |  |
| BALDINO'S LOCK & KEY<br>SERVICE, INC., ET AL., | * |  |
| Defendants. | * |  |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4. (ECF No. 11.) Pending before the court is defendants' Motion for Leave to File Second Amended Answer and Counterclaim ("Motion") (ECF No. 41), plaintiff's Opposition (ECF No. 45), defendants' Reply (ECF No. 48), plaintiff's Surreply (ECF No. 49), and defendants' Response to plaintiff's Surreply (ECF No. 50).[1] No hearing is deemed necessary. Loc. R. 105.6. For the following reasons, defendants' motion (ECF No. 41) will be denied.

**I.     BACKGROUND**

Defendants Baldino's Lock & Key Service, Inc. and Baldino's Electronic Security, Inc. entered into contracts for directory and advertising services with plaintiff SuperMedia LLC, formerly known as Idearc Media LLC, in 2007, 2008, 2009, and 2010. The parties agree that the

---

[1] Defendants first filed the Motion (ECF No. 40) on March 25, 2013, but filed a Corrected Motion (ECF No. 41) on April 2, 2013, correcting formatting errors only.

contracts are valid, and it is not disputed that Texas law governs. (ECF Nos. 41-1 at 3, 45 at 4.) Plaintiff filed this suit to collect amounts owed under the contracts for services provided from 2008 to 2010, for which defendants have not paid. (ECF No. 1.) In a Memorandum and Order dated February 14, 2013 (ECF No. 34), this court dismissed defendants' eleven affirmative defenses and thirteen counterclaims contained in their First Amended Answer and Counterclaim (ECF No. 16). Defendants have filed a Motion for Leave to File Second Amended Answer and Counterclaim. (ECF No. 41.)

## II.  DISCUSSION

### A.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 15 provides that if a party has previously amended a pleading, the party "may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(1)-(2). The decision whether to grant leave to amend is within the discretion of the district court, but should only be denied "'when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" Cuthie v. Fleet Reserve Ass'n, 743 F. Supp. 2d 486, 492 (D. Md. 2010) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999)).

### B.  MOTION TO AMEND COUNTERLCAIM

Plaintiff argues that defendants' Motion should be denied because defendants unduly delayed in moving to amend, and the amendment would be futile. For the reasons detailed below, although there is no basis to deny the Motion because of undue delay, the Motion will be denied because any proposed amendments to the Counterclaim would be futile, as defendants still fail to state a claim upon which relief can be granted.

### 1. UNDUE DELAY

First, plaintiff asserts that amendment is barred by undue delay. The Fourth Circuit has held that "[d]elay alone is an insufficient reason to deny leave to amend. Rather, delay must be accompanied by prejudice, bad faith, or futility." See Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999). In this case, there has been no undue delay by defendants. After defendants' counterclaims were dismissed (ECF No. 34), defendants promptly retained new counsel, and informed the court of their intention to move for leave to file a Second Amended Answer and Counterclaim. (ECF No. 37.) The undersigned imposed a deadline for defendants to so move (ECF No. 39), and defendants met that deadline (ECF Nos. 40 and 41). There has been no delay, and in any case, delay alone is an insufficient reason to deny leave to amend. Edwards, 178 F.3d at 242. Thus, plaintiff's first argument, that amendment is barred by undue delay, is rejected.

### 2. FUTILITY

Plaintiff's second argument is that leave to amend the Counterclaim should be denied on the grounds of futility. Amendment is futile if the claims as amended would not survive a motion to dismiss for failure to state a claim upon which relief can be granted, made pursuant to Fed. R. Civ. P. 12(b)(6). Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995) (affirming denial of motion for leave to amend "because the proposed amendments could not withstand a motion to dismiss"). Therefore, the "plausibility" standard for pleading, articulated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), applies here. Under that standard, accepting all defendants' factual allegations as true, a claim must "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 664, 678. "[A] pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). Rather, the claim must contain sufficient facts to advance defendants' claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. For the following reasons, each of defendants' proposed amendments is futile.

In their proposed Second Amended Counterclaim, defendants assert claims for negligence (Count II) and breach of contract (Count III). The undersigned previously dismissed defendants' claims of negligent misrepresentation and their contract-based counterclaims. (ECF No. 34.) Defendants have now proposed to amend their Counterclaim to include allegations that plaintiff "unilaterally flood[ed] the locksmith section of its print directories and superpages.com with false information that was designed to steal business of Baldino's and other legitimate locksmiths." (ECF No. 41-2 at 8.) Defendants allege that hundreds of unlicensed locksmiths did not pay plaintiff for listing services, but rather plaintiff obtained the information from telephone companies and published it, in print and online, in knowing participation in a scam by the "phony" locksmiths to extort customers. (ECF No. 41-2 at 4-5.) Even taking into account the new factual allegations now proffered by defendants, their claim may be simplified into an argument that plaintiff is liable to defendants for publishing the listings of "false" locksmiths. The claims for negligence and breach of contract, as amended, suffer from the same deficiencies that previously warranted dismissal of defendants' counterclaims.

As to defendants' proposed negligence counterclaim, under Texas law, a claim based on the negligence of a party to a contract requires a duty of care "above and beyond the one arising simply from the contract." Idearc Media Corp. v. Reliable 24 Hour Plumbing Servs., No. 1:07:396, 2007 WL 2688274, at *4 (E.D. Va. Sept. 11, 2007) ("Absent some other tortious conduct that proximately caused an injury to [defendants], they may not seek recovery in tort

4

where the asserted duty arises only out of the obligations of a contract." (citing Sw. Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex. 1991)). A claim sounding in tort must be based on conduct that that "would give rise to liability independent of the fact that a contract exists between the parties." DeLanney, 809 S.W.2d at 494.

Here, plaintiff owed defendants no duty beyond that imposed by the contract between the parties. Plaintiff provided defendants with advertising and listing services as outlined in the contract. The conduct alleged in this case, that plaintiff allowed "phony" listings to be published, does not give rise to a tort action because plaintiff had no independent duty to monitor the content of other listings. See Farina v. Sw. Bell Media Inc., 658 F. Supp. 826, 828 (S.D. Tex. 1987) (holding that allegation of publisher's intentional failure to publish advertisement did not implicate a duty independent of the contract to support a negligence claim).

The cases cited by defendants in support of allowing their proposed amendment are inapposite. See Helms v. Sw. Bel Tel. Co., 794 F.2d 188, 194 (5th Cir. 1986) (publisher could not limit its liability for negligence when it printed incorrect telephone number in advertiser's ad); Reuben H. Donnelley Corp. v. McKinnon, 688 S.W.2d 612, 616 (Tex. App. 1985) (publisher could not limit its liability for negligence when it wrongly canceled advertiser's ad)[2]; Posey v. Sw. Bell Yellow Pages, 878 S.W.2d 275, 279 (Tex. App. 1994) (listing a customer's name with the contact information of a competitor was a potential breach of duty beyond the contract). Those cases concerned the publishers' negligence in committing errors with respect to

---

[2] Farina clarifies that, although Helms and Reuben H. Donnelley Corp. held that a breach of contract is itself also potentially a tort, such reasoning applies only if "there is intentionally tortious conduct, such as fraud, or the nonfeasance is negligent and results in physical harm, which a person always has a duty to avoid." 658 F. Supp. at 828. In other words, the court in Farina held that unless a duty existed independent of the contract, the advertiser could not state a negligence claim against the publisher, even for intentional nonfeasance. Id.

5

the advertisers' own information. There is no such allegation in this case. Moreover, more recent cases from the Supreme Court of Texas make clear that when a party seeks recovery only for the economic injury of lost profits, that party's action sounds in contract, not in tort. DeLanney, 809 S.W.2d at 495 ("Although [the advertiser] pleaded his action as one in negligence, he clearly sought to recover the benefit of his bargain with [the publisher]."); Crawford v. Ace Sign, Inc., 917 S.W.2d 12, 13-14 (Tex. 1996) (per curiam) (recognizing the distinction between contract and negligence claims articulated in DeLanney). In sum, leave to amend defendants' Counterclaim to include a claim of negligence will be denied as futile.

As to defendants' proposed counterclaim for breach of contract, no contractual provision could be read to impose a duty on plaintiff to investigate and verify the information in other listings. The terms of the contract explicitly state that plaintiff "[d]oes not guarantee the placement of any Ad (or the Ad of any other advertiser) on or within any Publication, the Electronic Platform or any page, cover, or heading and will not provide any adjustments on claims relating to the placement for any Ad." (ECF No. 1 Ex. H § 13.) The contract further provides that plaintiff is not responsible for the content provided by advertisers. (Id. § 16.) The contract is silent as to the content of the allegedly non-paid listings of "phony" locksmiths at issue, which defendants argue are distinct from "advertisers." This is a distinction without a difference with respect to any duty on plaintiff's part to remove the false information. As discussed above, cases recognizing breach of contract claims by an advertiser against a publisher involve the advertisers' own ads, not the content of other listings in the same directories. See, e.g., Farina, 658 F. Supp. at 828. In addition, there was no duty, as defendants allege, for plaintiff to act in good faith or to promote defendants' business. (ECF No. 41-2 at 4.) As stated in the Memorandum and Order of February 14, 2013 (ECF No. 34), no duty of good faith was

implied in the contract, or arose from the parties' relationship.  Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 52 (Tex. 1998); Humble Emergency Physicians, P.A. v. Mem'l Hermann Healthcare Sys., Inc., No. 01-09-00587-CV, 2011 WL 1584854, at *4-6 (Tex. App. Apr. 21, 2011).  Defendants' proposed counterclaims for negligence and breach of contract, despite defendants' additional factual allegations, fail to state a claim upon which relief can be granted.

Defendants also propose two new counterclaims.  First, in Count I of their proposed Second Amended Counterclaim, defendants assert a claim for a violation of the Texas Deceptive Trade Practices Act ("DTPA").  Tex. Bus. & Com. Code Ann. § 17.41 et seq. (West 2011).  The DTPA creates a cause of action against any person who, among other things, engages in unconscionable conduct, or misrepresents the source, geographic origin, characteristics, or rights and obligations associated with goods or services, to induce a consumer into a transaction.  Id. §§ 17.50(a)(3); 17.46 (b)(3)-(5), (12), (24).  However, "[a]n allegation of a mere breach of contract, without more, does not constitute a false, misleading or deceptive act in violation of the DTPA." Crawford, 917 S.W.2d at 13 (citation and internal quotation marks omitted); Helms, 794 F.2d at 191 (same); Farina, 658 F. Supp. at 828 (same).[3]

---

[3] Defendants argue that, if the undersigned finds that they have not stated a plausible claim for a DTPA violation, the decisions in Crawford and Helms instruct that there must have been a breach of contract.  In those cases, the publishers admitted to breaching their contracts, but the advertisers could not state claims for DTPA violations.  The holdings did not depend on the existence of a breach of contract claim, but rather on whether the conduct alleged could also sustain a DTPA claim.  Despite defendants' argument that plaintiff "cannot have it both ways" (ECF No. 48 at 5), it does not follow that defendants must have one or the other cause of action.  Even though the factual scenario here is different inasmuch as neither the breach of contract nor DTPA claim survives, the reasoning regarding DTPA claims in Crawford and Helms is still applicable to this case.

7

Here, defendants allege that plaintiff violated the DTPA by publishing listings for "phony" locksmiths and by orally promising defendants that it would remove the false listings as an inducement for defendants to renew their contract. (ECF No. 48 at 4.) By publishing advertisements or listings of third party businesses, plaintiff did not make any representation about goods or services.[4] The representation in an advertisement or listing is made by the business listed, and the DTPA imposes no duty on plaintiff, the publisher, to monitor the listings it publishes for accuracy. To state a claim for a DTPA violation, defendants must allege that plaintiff did something "more" than simply breach the contract between the parties. See, e.g., Crawford, 917 S.W.2d at 14 (total failure to print advertiser's ad, despite specific promise to do so, was not a DTPA violation). In Crawford, the Supreme Court of Texas concluded that oral representations by the publisher's employee, that induced plaintiff to enter a contract, could not sustain a DTPA claim. Id. at 15. The court held that the publisher's statements did not cause the harm, but rather the injury for alleged lost profits was governed by contract law. Id. at 14-15. Further, the court noted that, to recognize a DTPA claim in that situation would convert every breach of contract into a DTPA claim. Id. at 14. The same rationale applies in this case.[5] In

---

[4] While the undersigned accepts as true defendants' assertion that plaintiff "unilaterally" acquired the listings from the telephone company, according to the allegations in defendants' proposed Counterclaim, the actual information in the listings was provided to the telephone company by the subject businesses. (ECF No. 41-2 at 4-5.)

[5] In the cases relied upon by defendants, Posey, 878 S.W.2d at 280, and White v. Southwestern Bell Telephone Co., 651 S.W.2d 260 (1983), the publisher erroneously printed the advertiser's name with incorrect contact information, supporting a DTPA claim. This case, however, is distinguishable from Posey and White because, as discussed above, there is no allegation that plaintiff failed to correctly print defendants' information. Indeed, according to documents offered by defendants (ECF No. 27 Exs. 4 and 5), plaintiff informed defendants that only the telephone company, Verizon, could remove the "phony" listings, and, after defendants contacted Verizon, the listings at issue were removed.

sum, because defendants have not stated a plausible DTPA claim, leave to allow the proposed amendment in Count I to assert a DTPA claim will be denied as futile.

Finally, defendants' proposed Count IV asserts a new claim for a violation of the false advertising provision of the Lanham Act. 15 U.S.C. § 1125(a)(1)(B). In order to establish a false advertising claim pursuant to the Lanham Act, a party must prove that the opponent "made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product." Scotts Co. v. United Indus., 315 F.3d 264, 272 (4th Cir. 2002). Here, plaintiff did not make any representation in a commercial advertisement or otherwise. Plaintiff merely published information provided to it by defendants and the other businesses in the listings. Because defendants' claim is based on representations made by other advertisers, defendants cannot state a Lanham Act false advertising claim against plaintiff, the publisher of those ads. See Am. Ass'n of Orthodontists v. Yellow Book USA, Inc., 434 F.3d 1100, 1104 (8th Cir. 2006) (advertiser did not have standing to sue publisher for another advertiser's allegedly false content). In American Association of Orthodontists, an orthodontists' association and its members asserted a Lanham Act violation against a directory publisher, alleging that it was deceptive for the publisher to list general dentists in the orthodontist listings, when the general dentists lacked the qualifications to do orthodontic work. Id. at 1101. The Eighth Circuit held that the orthodontists' association did not have standing to sue the publisher, but instead any claim should have been brought against the advertiser, i.e., the particular dentist whose qualifications were allegedly deficient.[6] Id. at 1102. Applying that

---

[6] The Eighth Circuit noted that while a number of circuits hold that only competitors of the wrongdoer have standing, other circuits use a multi-factor test based on the test for standing in an antitrust case. Am. Ass'n of Orthodontists, 434 F.3d at 1104. The Eighth Circuit held that plaintiff orthodontists' association lacked standing to sue the publisher under either approach. Likewise, under either test, the undersigned concludes that defendants do not have standing to

reasoning to this case, defendants lack standing to sue plaintiff, the publisher, for a Lanham Act violation. The defendants and other locksmiths are the "advertisers," and any claim for false advertising based on "phony" locksmith listings should be brought against the other advertisers, i.e., the "phony" locksmith, not plaintiff, who merely published the advertisements. Id. at 1104. Because plaintiff has not made any representation in a commercial advertisement, defendants have failed to state a claim against plaintiff for a violation of the Lanham Act.

Based upon the foregoing, the undersigned concludes that defendants' proposed amended counterclaims would not survive a motion to dismiss. Accordingly, defendants' Motion for Leave to File Second Amended Answer and Counterclaim must be denied on the ground of futility.

### C. MOTION TO AMEND ANSWER

Defendants' Motion also seeks leave to file a Second Amended Answer to correct several errors in the First Amended Answer (ECF No. 41-1 at 3 n.3), and to add a single affirmative defense (i.e., that Count II of plaintiff's Complaint fails to state a claim upon which relief can be granted under Texas law). (ECF No. 41-2 at 1-2.) Plaintiff has not opposed the proposed amendment of defendants' Answer. Accordingly, defendants' Motion will be granted insofar as it seeks to file a Second Amended Answer.

### III. CONCLUSION

For the reasons stated above, it is HEREBY ORDERED this ___13th___ day of August, 2013, that defendants' Motion for Leave to File Second Amended Answer and Counterclaim (ECF No. 41) is GRANTED as it relates to filing a Second Amended Answer and

---

assert a Lanham Act claim against plaintiff based on the publication of the "false" advertisements of competitors.

DENIED insofar as it seeks leave to file a Second Amended Counterclaim.


Date:  8-13-13                                      /s/
                                          Beth P. Gesner
                                          United States Magistrate Judge